JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Halbert Ezell appeals the jury's verdict finding him guilty of gross sexual imposition. Ezell assigns the following error for our review:
"I. The verdict convicting the appellant of gross sexual imposition was against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we reverse Ezell's conviction and vacate his sentence. The apposite facts follow.
 {¶ 3} On July 21, 2005, the Cuyahoga County Grand Jury indicted Ezell for four counts of rape, and one count each of attempted rape, kidnaping, and gross sexual imposition. On August 4, 2005, Ezell pleaded not guilty at his arraignment, and several pre-trials ensued which resulted in the State of Ohio dismissing two counts of rape. On January 25, 2006, a jury trial commenced on the remaining charges.
 Jury Trial {¶ 4} The facts establish that appellant Halbert Ezell and the victim, D.G., were involved in an "on again, off again" relationship. Although they maintained separate residences, they shared parenting of their son and D.G.'s daughter by a former relationship.
 {¶ 5} Sometime in July 2005, D.G. invited Ezell to stay at her home to celebrate her upcoming birthday. Ezell spent the days and nights leading up to *Page 3 
D.G.'s birthday, with her and the children. On the day prior to D.G.'s birthday, Ezell, D.G., and the children spent the entire day at an amusement park.
 {¶ 6} D.G. testified at trial that on July 2, 2005, after she, Ezell, and the children returned home from the amusement park, Ezell went to the store and bought some beer and vodka. According to D.G., she and Ezell had several drinks, but Ezell, who had more, became intoxicated. As a result, Ezell began arguing with her about a man he had seen her talking with on a previous occasion. D.G. suggested to Ezell that he should go to bed and sleep off his intoxication.
 {¶ 7} After Ezell went to sleep, D.G. watched television with the children and then she put them to bed. D.G. retired to bed and laid beside Ezell. A short while later, Ezell got out of bed, sat in a chair by the window, and began talking to himself. This aggravated D.G., who then moved to another room in an attempt to get some sleep.
 {¶ 8} Approximately thirty minutes later, Ezell joined D.G. in the bedroom, began making derogatory comments about the man he had seen her talking with by the elevator, and told D.G. that he wanted to have sex. D.G. told Ezell that they could have sex before she left for work the next morning. Ezell walked out the room, but returned moments later and joined D.G. in bed.
 {¶ 9} D.G. described the events when Ezell attempted to get on top of D.G., but she resisted. Ezell tore off D.G.'s underwear, and began fondling her, and inserted his finger into her vagina. She testified that she screamed and he told her *Page 4 
to shut up; afterwards, he threatened to snap her neck. Thereafter, he then left the room.
 {¶ 10} D.G. put on another pair of pajamas, returned to her bedroom, and laid with her back towards Ezell. Ezell began rubbing his penis against D.G.'s buttocks, kept telling her they were going to have sex, and tugged at her pajama pants to remove them. Initially, D.G. resisted, but then allowed Ezell to remove her pajama pants. D.G. clenched her legs, but Ezell overpowered her and inserted his penis in her vagina.
 {¶ 11} Afterwards, D.G. told Ezell to leave; he refused and stated that he was drunk. Later, he gathered his belongings and left the apartment. After Ezell left the apartment, D.G. called the police to report that she had been raped.
 {¶ 12} At trial, D.G. admitted she had told Ezell that they would have sex the next day. After being presented with her telephone records, D.G. also admitted that she had called eight people before calling the police. Further, D.G. admitted that on a previous occasion, after an argument, she ordered Ezell out of her home, and when Ezell went to pick up her daughter from school, D.G. reported that Ezell did not have consent. As a result, Ezell was charged with kidnaping and jailed for two days. D.G. later dismissed the charges. Finally, D.G. admitted that since the incident, she has dropped off the parties' son for regular visitation with Ezell, and she admitted that she was not afraid of Ezell. *Page 5 
 {¶ 13} At the close of the State's case, the trial court directed a verdict in favor of Ezell on two counts, the attempted rape and kidnaping charges.
 {¶ 14} At trial, Ezell took the stand in his own defense. Ezell testified that he and D.G. had a five-year-old son. Ezell stated that he is like a father to D.G.'s daughter from a previous relationship. Ezell testified that prior to her birthday on July 3, 2005, D.G. invited him to stay with her and the children. Ezell stated that he spent four days at D.G.'s home.
 {¶ 15} Ezell testified as follows regarding the incident on July 3, 2005:
 "A. About this time, as time went on, it's getting late, and I was in the back room with the kids. And [D.G.] said, Neal come up here, come up here. And I come up front and she pulled something up on HBO Demands, it was like a porno or some type of sexual act going on the cable station that she had ordered off the television. So I said, well, okay. I close up front with her. I told the kids to stay in back and stay in our room because we got the big 35 — inch — 36-inch TV in the bedroom, in [D.G's] bedroom.
 Q. Let me interrupt you. Were you two having alcohol?
 A. Yeah, we both was drinking. I must have had like three or four drinks. She had about three or four drinks that same night.
 Q. Did there come a time when you went to bed?
 A. Yeah, because she had got a phone call while we were watching the movies and talking and playing around, and she got a phone call on the cell phone. And I could tell it was a guy from her whole reaction, and I'm thinking it's the guy on the elevator, like she stated. I'm thinking it's him. So I go in the back in my son's room and I said I'm going to go in there and watch TV. So I end up falling asleep watching TV.
 Q. Did there come a time when you and she were there together after midnight, in the early morning hours; do you recall that? *Page 6 
 A. All I know — all I can recall when — when I woke up she was in my son's room with me. She was laying in the bed with me, and that's when — I was rubbing all along her, you know. And we was talking — we was saying something, mumbling something, and then I slide, you know, her panties up. I slid them off. And then we just had sex, just like any other night, like — three or four nights I was over there, like regular routine.
 Q. At any time did she indicate she did not want to do that?
 A. No indication whatsoever.
 Q. Did there come a time when you used force?
 A. Didn't have to use any force.
 Q. Was there a struggle where someone was falling off the bed?
 A. No, no struggle.
 Q. After that occurred, what did you do next? Did you stay or-
 A. No. As a matter of fact, I had realized from being over there for so long, I had no clothes to wear to take her out early Sunday morning. So I told her, I'm like, look, [D.G.], I'm going to go home. I'm going to go home and wash some clothes or get some clothes together because I haven't been home because I've been here four days. And she caught like a little attitude, like you going to do this and leave, you know, whatever. I am like, girl, I be back. It went like this, like you ain't coming back. One of those little type arguments, whatever."[1]
 {¶ 16} Ezell testified that D.G.'s aunt and cousin posted his bond. He also stated that as a result of these charges, he was terminated from his job at North Coast Behavioral Hospital, had his car repossessed, and would be evicted from his apartment. *Page 7 
 {¶ 17} On January 27, 2006, the jury returned not guilty verdicts on all the rape charges, but returned a guilty verdict on the gross sexual imposition charge. The trial court referred Ezell to the probation department for the preparation of a pre-sentence investigative report.
 {¶ 18} At the sentencing hearing on March 13, 2006, the trial court stated:
 "The Court agrees with one thing and that it's a bad situation and incorporating into my findings here all the testimony at trial which is going to be part of the record. I am not going to repeat all of it for a factual basis what I'm doing here, but in general we have a young man and woman who have been living together I believe off and on for approximately six years. They have a child together, a young boy, and on July 3 of 05, the defendant was on the premises by way of invitation. There was some drinking involved. The incident occurred in the bedroom that was shared by them. It is true that the jury believed the testimony, and it was their duty factually to determine if the victim had said no regarding any sexual advances on this occasion. If my recollection serves me accurately, I believe she said maybe in the morning. And the defendant in the dispute was he said it was consensual and she said she did not want to have sexual relations at this time. That was the issue for the jury. The jury believed that obviously had reasonable doubt that it was rape but they did find the defendant guilty of gross sexual imposition. The defendant's record is not good at all regarding his driving, driving under suspension but he has no prior felonies, no prior sexual convictions. It is uncontradicted that he was a hard worker at North Coast according to the five letters praising his working habits. I believe even at trial there was some testimony from a couple of workers. But up until this time you've been a hard worker and no prior felony record, no prior sexual record. It's a bizarre unfortunate thing at age 32 but the court does believe that there is a presumption for community controlled sanctions here. I do not believe under the totality of the circumstances or from the evidence that I heard that the presumption for community-control sanctions should be removed here."[2] *Page 8 
 {¶ 19} Thereafter, the trial court sentenced Ezell to two years and six months of probation. In addition, the trial court conducted a sexual predator classification hearing. The trial court found Ezell, who received a Static-99 score of zero, not likely to re-offend. The trial court classified Ezell as a sexually oriented offender.
 Manifest Weight {¶ 20} In his sole assigned error, Ezell argues the jury's verdict was against the manifest weight of the evidence. We agree. *Page 9 
 {¶ 21} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way * * *"[3] The appellate court thus acts as a "thirteenth juror."[4] As a thirteenth juror, we may disagree with the jury when we find that the evidence in the case does not rationally support the verdict; consequently, in our evidentiary evaluation of this case, the jury lost its way.[5]
 {¶ 22} The State introduced three sexual acts against Ezell. They averred he offensively fondled D.G.'s body; he digitally raped her; and he vaginally raped her. The jury returned a guilty verdict only on the fondling. However, we conclude that *Page 10 
the elements of gross sexual imposition were not proven beyond a reasonable doubt, particularly in light of the fact that Ezell was acquitted of the other charges. The three acts that the State introduced all took place under the same scenario. In light of the totality of the circumstances, it is reasonable to conclude that Ezell's version of the events is more credible. It is at this evaluation of the record, we believe the jury lost its way.
 {¶ 23} D.G. admitted that she had told Ezell that they would have sex in the morning one hour before she was scheduled to leave for work.[6]
D.G. also admitted that during the course of their "on and off relationship," she had sexual relations with Ezell numerous times. Ezell testified that he spent four days at D.G.'s home, and each night they had consensual sexual relations. Ezell testified that the night in question, D.G. consumed several alcoholic beverages and watched a pornographic movie, which D.G. had ordered from HBO Demands. Ezell maintained that any sexual contact or touching of D.G. was consensual.
 {¶ 24} Here, all the uncontested facts and circumstances surrounding the incident compels an acquittal on the gross sexual imposition charge. A reviewing court will not substitute its judgment for that of the trier of fact unless it is patently *Page 11 
apparent that the fact-finder lost its way.[7] So it's "patently apparent" to us the jury did so.
 {¶ 25} We are mindful of, and agree with, State v. Gale,[8] a Franklin County case, that held in a case of multiple counts of rape and gross sexual imposition a defendant may be found guilty of some of the counts and not others. State v. Gale is different factually and in its results. In State v. Gale, the appellant denied any sexual activity with the victim. Gale testified that "nothing happened." Gale averred that they fought, but no sexual activity occurred. The jury concluded he committed gross sexual imposition and inducing panic, but not rape and kidnaping. The Franklin County Court of Appeals remarked that Gale's action of barricading himself in the apartment was unexplainable and affirmed the jury's verdict. These facts differ greatly from the facts in this case. Here, Ezell admitted that the parties had sex, and averred that it was consensual.
 {¶ 26} We agree that the jury is in the best seat to judge credibility; however, when the facts show the jury lost its way, the court of appeals may act as a "thirteenth juror" and correct the evidentiary misstep. Our role is to determine whether the evidence rationally supports the verdict. In State v. Gale, the evidence rationally supported the verdict; here it does not. Conviction reversed and sentence vacated. *Page 12 
It is, therefore considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, PRESIDING JUDGE
MELODY J. STEWART, J., and MARY J. BOYLE, J., CONCUR
[1] Tr. at 302-304.
[2] Tr. at 421-422.
[3] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[4] Id.
[5] See State v. Wilson, 2007-Ohio-2202, 113 Ohio St.3d 382.
[6] Tr. at 192.
[7] State v. McCallister, 2nd Dist. No. 21637,2007-Ohio-576 at 19.
[8] 2006-Ohio-1523. *Page 1